**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CARLIS ANTHONY BALL,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | )    **Case No. 11-CV-035-GKF-FHM** |
| | ) |
| **ROBERT PATTON, Director,[1]** | ) |
| | ) |
| **Respondent.** | ) |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner Carlis Anthony Ball is a state prisoner appearing pro se. Respondent filed a response (Dkt. # 5) and provided the state court record necessary for resolution of Petitioner's claims (Dkt. ## 5, 6, 7, 8). Petitioner filed a reply (Dkt. # 10). For the reasons discussed below, the petition for writ of habeas corpus is denied.

### BACKGROUND

Petitioner was originally convicted, in Tulsa County District Court, Case No. CF-2005-2586, of First Degree Murder (Count I) and Child Neglect (Count II). He appealed his convictions and sentences to the Oklahoma Court of Criminal Appeals (OCCA). In a published Opinion, filed November 14, 2007, see Dkt. # 5-4; Ball v. State, 173 P.3d 81 (Okla. Crim. App. 2007), the OCCA affirmed Petitioner's convictions, but vacated his sentences and remanded for resentencing. Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the OCCA in its Opinion are

---

[1]    Petitioner is in custody at Cimarron Correctional Facility, a private prison in Oklahoma. Therefore, under Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts, Robert Patton, Director of the Oklahoma Department of Corrections, is the proper party respondent. Pursuant to Fed. R. Civ. P. 25(d)(1), Robert Patton, Director, is hereby substituted as the respondent in this case. The Court Clerk shall be directed to note such substitution on the record.

presumed correct.  Following review of the filings, trial transcripts, and other materials submitted by the parties, the Court finds the summary of facts by the OCCA, as set forth below, is adequate and accurate.  Therefore, the Court adopts this summary as its own.  Additional facts, apparent from the record, may be presented throughout this opinion as they become pertinent to the Court's analysis.

Appellant lived in a Tulsa apartment with his four children.  [K.T.], the youngest, was almost three years old.  Around 4:25 p.m. on June 9, 2005, Appellant placed a frantic call to 911.  On the recording, Appellant intermittently shrieks in apparent horror and pleads incoherently, but gives the operator his address and says "My son – and I, I spilled some water on him yesterday but I didn't want to go to jail so I (unintelligible)."  Appellant then returned to the child's side as his neighbor, Angela Wykoff, came on the line, begging rescuers to come quickly.  Ms. Wykoff, whom Appellant had summoned from her apartment upstairs, was unsure what had happened.  She relayed the operator's directions and questions to Appellant, and repeated Appellant's answers on the line.  Appellant is heard on the tape again saying he spilled "boiling hot water" on the child.  When asked if the child had vomited, Appellant states that "yes, he's been vomiting and – he's, he's been shitting too, I don't know what the fuck he ate . . . (unintelligible)."  Wykoff also repeated to the 911 operator Appellant's statement that the child bit his lip.  Wykoff described the child's skin as "all pink" and "scorched" all over.  Ms. Wykoff described the child at one point as struggling for breath.

First responders found [K.T.] naked on the apartment floor, and could see he was severely burned.  Fire Captain Gretta Hurt started CPR on [K.T.] as her crew unloaded rescue equipment.  When she heard EMSA arrive, Captain Hurt scooped him into her arms and ran for the ambulance.  EMSA Paramedics and other firefighters continued lifesaving efforts, but [K.T.]'s vital signs slipped away.

Captain Hurt escorted Appellant into his apartment to get more information.  Appellant told her that on the night before he had boiled water for macaroni and cheese, but changed his mind.  While taking the water off the stove, the pot slipped from his hand, spilling on [K.T.], who had been standing right behind him.  Appellant said he failed to seek medical care because he was afraid he would get into trouble.

Firefighter Loren Parker continued CPR on [K.T.] after Captain Hurt had transferred [K.T.] to the ambulance.  Appellant, highly agitated, forced his way into the ambulance.  Appellant told Parker that [K.T.] had pulled a pot of boiling water onto himself the night before.  Paramedic Michael Kisler testified that Appellant said he had "dunked" [K.T.] in cold water and [K.T.] had begun to vomit; that [K.T.]'s skin began to "sluff off;" and that [K.T.] lost consciousness just before Appellant called 911.  Kisler told Appellant to leave the ambulance so they could save his

2

child. The rescuers rushed [K.T.] to Hillcrest Hospital, but he never regained consciousness. Around 5:07 p.m., [K.T.] was pronounced dead.

After the ambulance left, Appellant lay in the street screaming "Help my baby, help my baby." Appellant's girlfriend, Lakeishia Thomas, who lived in a nearby apartment, went to his side and helped him back to his apartment, where he spoke with Assistant Fire Marshal Curtis Ozment. Appellant told Ozment how he had spilled boiling water on [K.T.], adding that he tried to treat the burns with cool water and alcohol. Police later recovered an empty bottle of hydrogen peroxide and some pain relievers in the apartment, but never located any rubbing alcohol.

Post-mortem examination showed that [K.T.] had suffered severe thermal injury from water scalding to more than half of his body, including his head and face, neck and upper arms, torso, genitals, and buttocks. Forensic pathologist R.F. Distefano, D.O., who conducted the autopsy, found evidence of active debridement, or removal, of [K.T.]'s scalded skin. He also noted other injuries: two areas of subdural hematoma with a healing process suggesting infliction approximately four or five days before death; two other scalp injuries of indeterminate origin; and a complex laceration of the lower lip with a healing process suggesting injury four or five days prior to death. Dr. Distefano concluded that the pattern of burning indicated a deliberate pouring of scalding water rather than an accidental spill. The need for immediate care to the severe injuries [K.T.] suffered would have been apparent to an adult.

Police investigators testified that on the evening of [K.T.]'s death, Appellant's kitchen floor appeared dry and dirty with no indication of a recent water spill. Detectives did find a large area of wet carpet in a bedroom. In the closet of that bedroom, they recovered samples of what proved to be human blood and feces from the closet walls, the door knob, and a white towel. On a drywall sample recovered from the closet, detectives located human skin. Subsequent DNA analysis matched [K.T.]'s genetic profile to stains on the drywall and the doorknob, and to the piece of skin.

Several days after the death, detectives returned to the apartment. They decided to pour boiling water on the kitchen floor and see what would happen. The boiling water did not peel, melt, or blister the flooring. It ran from the center of the floor and pooled in the southeast corner, washing dirt and particulate matter away with it, leaving a visible area of the floor affected by the water.

The State also presented the testimony of Dr. Robert Block, a longtime Child Abuse Medical Examiner. Dr. Block gave his professional opinion that the injuries to [K.T.] were inflicted by pouring scalding hot water on the child. He also testified to his professional opinion that the injuries were painful and not accidental; would have caused visible distress including the vomiting and diarrhea described by Appellant; and that the need for immediate medical care would be obvious to someone who came in contact with the child.

Lakeishia Thomas, Appellant's girlfriend, testified to several contacts with Appellant on the day before [K.T.]'s death. She spent time with Appellant and his children at his apartment on the morning of June 8, 2005. She returned to her

3

apartment when her children came home from school. She borrowed salt from Appellant around 8:30 p.m. while making dinner. Appellant passed the salt to her through the door. She noticed that he looked upset. She returned the salt, which he again took from her at the door. She had seen [K.T.] and Appellant's other children earlier in the day, but apparently did not see them at any time that evening.

Appellant came to Lakeishia Thomas' apartment around 1 a.m, June 9, 2005. He still seemed sick. He lay [sic] down on her bed, and soon vomited in a trash can. When Lakeishia asked Appellant what was bothering him, he said "I always do this when I have a bad feeling," and said he was upset about Lakeishia possibly dating another man. Lakeishia and Appellant returned to his apartment, watched a movie together, and went to bed. Appellant awoke her before dawn and the two had sex, after which she returned to sleep. Lakeishia apparently left the apartment sometime that morning, again without seeing [K.T.] or the other children. She did not see Appellant again until after the emergency crews arrived later that afternoon.

Ball, 173 P.3d at 85-86.

As a result of those events Petitioner was charged in an amended information with First Degree Murder (Count 1), and Child Neglect (Count 2), in Tulsa County District Court, Case No. CF-2005-2586. See Dkt. # 7-19, O.R. at 61-65. At the conclusion of a jury trial, Petitioner was found guilty as charged. Petitioner called no witnesses and did not testify. Tulsa County District Judge P. Thomas Thornbrugh presided at trial. On March 27, 2006, the trial judge denied Petitioner's reurged motion to merge Counts 1 and 2, and sentenced Petitioner, in accordance with the jury's recommendation, to life imprisonment without the possibility of parole on Count 1, and life imprisonment on Count 2, with the sentences ordered to be served consecutively. Petitioner was represented at trial by Pete Silva and Sid Conway, attorneys at the Tulsa County Public Defender's Office.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney Stuart W. Southerland, he raised the following ten (10) propositions of error:

4

Proposition One:        It was reversible error to permit medical experts to testify beyond the topics of cause of death or standard of care.  The court should not have admitted testimony that the child's death was not an accident under the facts of this case.

Proposition Two:        It was reversible error to refuse Appellant's requested instruction on the defense of excusable homicide.  The failure to properly instruct the jury as to Appellant's theory of defense constitutes a violation of Appellant's right to a fair trial in violation of the Fourteenth Amendment to the United States Constitution.

Proposition Three:        It was error to refuse Appellant's request for a lesser-included offense instruction in Count I.

Proposition Four:        Appellant's multiple convictions violate both constitutional and statutory prohibitions against double punishment.

Proposition Five:        The fruits of the search of Appellant's apartment should have been suppressed as having been conducted in violation of the Fourth Amendment to the United States Constitution.

        (a)    The search warrant issued on June 9, 2005, was a general search warrant prohibited by the Fourth Amendment of the United States Constitution.

        (b)    The evidence discovered in the closet of the apartment should have been excluded.

Proposition Six:        The State was permitted to present evidence which was irrelevant, prejudicial, and served to deny Appellant's right to a fair trial.

        (a)    It was reversible error to present evidence of Appellant's sexual activity which took place after his child was injured.

        (b)    The evidence discovered in the closet of the apartment should have been excluded.

        (c)    The medical examiner's reference to other injuries should have been excluded pursuant to 12 O.S.2001, § 2404(B).

Proposition Seven:        It was error to fail to instruct the jury as to the 85% parole restrictions of 21 O.S.Supp.2002, § 13.1.

5

Proposition Eight:   Instances of prosecutor misconduct served to deny Appellant the right to a fair trial in violation of the Fourteenth Amendment to the United States Constitution.

Proposition Nine:   As a result of defense counsel's failure to object on appropriate grounds, Appellant received ineffective assistance of counsel.

(a)   Failure to object to law enforcement's entry in to Appellant's apartment after the time for the execution of the search warrant had expired.

(b)   Failure to object to testimony regarding sexual activity on the grounds that the information had been obtained during Appellant's suppressed interrogation.

Proposition Ten:   The accumulation of error in this case deprived Appellant of due process of law, necessitating reversal of his convictions or modification of his sentence(s) pursuant to the Fourteenth Amendment to the United States Constitution.

(Dkt. # 5-1).  In a published Opinion, filed November 14, 2007, in Case No. F-2006-344, Ball v. State, 173 P.3d 81 (Okla. Crim. App. 2007), the OCCA found that the trial court erred in refusing Petitioner's requested instructions on excusable homicide and second-degree manslaughter, as argued in propositions two and three, but that, in light of the evidence presented at trial, the refusal did not contribute to the verdicts and provided no grounds for reversal.  Id. at 88-92.  The OCCA further found that the trial court erred in denying Petitioner's requested instruction on the 85% Rule, as argued in proposition seven.  Id. at 94.  The OCCA rejected Petitioner's remaining claims.  Based on those findings, the OCCA affirmed Petitioner's convictions, but vacated his sentences and remanded for resentencing.  Id. at 97.

Petitioner's non-jury resentencing trial took place on April 21, 2009.  See Dkt. # 7-15. Transcripts and exhibits from the first trial were presented to Tulsa County District Judge Tom C. Gillert.  Id.  On April 29, 2009, the district judge sentenced Petitioner to life imprisonment without

the possibility of parole on Count 1 and twenty-five (25) years imprisonment on Count 2, with the sentences to be served consecutively. <u>See</u> Dkt. # 7-18. Petitioner was represented at the resentencing trial by Assistant Public Defender Pete Silva.

Petitioner appealed to the OCCA. Represented by Assistant Public Defender Stuart W. Southerland, he raised two (2) propositions of error, as follows:

Proposition One:   It was error for the district court to refuse to consider Appellant's motion to suppress at his sentencing trial. Although the issue of guilt or innocence was not before the district court on remand, the question of the legality of the search warrant was relevant in the determination of the admissibility of evidence which the court used to determine Appellant's sentence.

(a)   The search warrant issued on June 9, 2005, was a general search warrant prohibited by the Fourth Amendment of the United States Constitution.

(b)   The affidavit failed to establish probable cause for the search.

Proposition Two:   The evidence was insufficient to convict Appellant of Child Neglect as a matter of law. Appellant was prejudiced by evidence admitted in support of Count II, which was relied upon by the district court at Appellant's sentencing. Whether viewed as plain error or a Sixth Amendment violation, Appellant's conviction in Count II must be reversed.

<u>See</u> Dkt. # 5-5. In an unpublished Opinion, filed February 26, 2010, in Case No. F-2009-440, the OCCA affirmed the sentences imposed by the District Court. <u>See</u> Dkt. # 5-7.

Next, Petitioner filed a pro se application for post-conviction relief in the district court. He raised five (5) claims of ineffective assistance of trial and appellate counsel. <u>See</u> Dkt. # 5-12 at 12-13. The state district court identified Petitioner's claims, as follows:

1)   My appellate counsel failed to argue that the jury in my case was improperly instructed as to the elements of child neglect. He also failed to argue that the information filed in my case failed to allege all of the elements of the crime. Finally,

7

there was an inadequate allegation of the factual basis for the offense in the information.

2)   My appellate counsel fail (sic) to argue in Petitioner's 'initial' appeal that the state fail (sic) to show that petitioner signed a written search waiver on June 9, 2005, and that the initial entry into Petitioner's apartment was unauthorized. Moreover, it was a search conducted without a warrant or a search waiver.

3)   My appellate counsel failed to fully and 'adequately' address the State violation of Petitioner's Fifth Amendment Right Under the United States Constitution.

4)   My appellate counsel failed to argue that the Prdsecutor's (sic) closing argument was improper unsupported by the recor (sic), misled jury, and were prominent and well-developed.

5)   My Appellant (sic) counsel failed to argue that the trial court committed reversible error by using 'hearsay' evidence of government witness's to make 'inadmissible' evidence 'admissible,' and 'refusing' to give Oklahoma Uniform Jury Instruction 9-42A.

Id.  In an amended application, Petitioner also claimed that error occurred because he was "charged and convicted of Felony Child Abuse Murder" and that the "precedent felony must constitute an 'independent crime' not included within the resulting homicide." Id. at 13.  By Order filed July 30, 2010, District Judge Tom Gillert granted in part and denied in part the application for post-conviction relief. Id. at 23.  Specifically, the court found merit to Petitioner's first argument that the jury was improperly instructed as to Count II of the State's Information. Id. at 13-14.  For that reason, the court vacated and set aside the judgment and sentence as to Count II and dismissed that count. Id. at 23.  The court further found that the issues raised by Petitioner in propositions 2-5 were in fact raised in Petitioner's direct appeal, id. at 19, and denied relief on the claim raised in the amended application, id. at 21-22.

Petitioner filed a post-conviction appeal.  See Dkt. # 5-8.  In his post-conviction petition in error, Petitioner identified six (6) claims.  He used the following words to describe his claims:

8

| | |
|---|---|
| Proposition One: | My ineffective assistance of appellant [sic] counsel claims in my timely application for post-conviction relief should not have been procedurally barred do [sic] [to] the fact that I was "represented" by the Tulsa County Public Defender's Office, both at trial and on appeal. |
| Proposition Two: | It was fundamental error for Judge Gillert to adjudicate Appellant's application for post-conviction without holding an evidentiary hearing. |
| Proposition Three: | My appellant [sic] counsel fail [sic] to argue in Petitioner's "initial" appeal that the State fail [sic] to show that Petitioner signed a written search waiver on June 9th, 2005, and that the initial entry into Petitioner's apartment was unauthorized.  Moreover, it was a search conducted without a search warrant or a search waiver. |
| Proposition Four: | My appellant [sic] counsel failed to argue that the prosecutor's closing argument was improper unsupported by the record, misled jury were prominent and well-developed. |
| Proposition Five: | My appellant [sic] counsel failed to argue that the trial court committed reversible error by using "hearsay" evidence of government witness's to make "inadmissible" evidence "admissible" and "refusing" to give Oklahoma Uniform Jury Instruction 9-42A. |
| Proposition Six: | My appellant [sic] counsel failed to fully and "adequately" address the state violation of Petitioner's Fifth Amendment right under the United States Constitution. |

Id. at 2.  In addition, as part of his post-conviction petition in error, Petitioner included a document

titled "Amended, Motion for Relief Form [sic] Judgment," alleging he was wrongfully convicted

of Child Neglect.  See id. at 31-33.  By order filed October 26, 2010, in Case No. PC-2010-791, the

OCCA affirmed the decision of the district court.  See Dkt. # 5-9.

On January 14, 2011, Petitioner filed his pro se federal petition for writ of habeas corpus

(Dkt. #1).  He raises the following grounds of error:

| | |
|---|---|
| Ground 1: | It was reversible error to permit medical experts to testify beyond the topics of the cause of death or standard of care.  The court should not have admitted |

testimony that the child's death was not an accident under the facts of the case.

Ground 2: It was reversible error to refuse Petitioner's requested instruction on the defense of excusable homicide. The failure to properly instruct the jury as to Petitioner's theory of defense constitutes a violation of Petitioner's right to a fair trial in violation of the Fourteenth Amendment to the United States Constitution.

Ground 3: It was error to refuse Petitioner's request for a lesser-included offense instruction in Count 1.

Ground 4: The fruits of the search of Petitioner's apartment should have been suppressed as having been conducted in violation of the Fourth Amendment of the United States Constitution.

a. The search warrant issued on June 9, 2005, was a general search warrant prohibited by the Fourth Amendment of the United States Constitution.

b. The evidence discovered in the closet of the apartment should have been excluded.

c. Any search waiver purported to have been signed by Petitioner is invalid.

Ground 5: The State was permitted to present evidence which was irrelevant, prejudicial, and served to deny Petitioner's right to a fair trial.

Ground 6: Instances of prosecutor misconduct served to deny Petitioner the right to a fair trial in violation of the Fourteenth Amendment to the United States Constitution.

Ground 7: As a result of defense counsel's failure to object on appropriate grounds, Petitioner received ineffective assistance of counsel.

Ground 8: It was error for the district court to refuse to consider defense counsel's motion to suppress at his re-sentencing trial. Although the issue of guilt or innocence was not before the district court on remand, the question of the legality of the search warrant was relevant in the determination of the admissibility of evidence which the court used to determine Appellant's sentence.

Ground 9:       The evidence was insufficient to convict Petitioner of Child Neglect as a matter of law.  Petitioner was prejudiced by evidence admitted in support of Count 2, which was relied upon by the jury at Petitioner's jury-trial and by the district court at Petitioner's re-sentencing nonjury-trial.

Ground 10:      My ineffective assistance of appellate counsel claims in my timely application for post-conviction relief should not have been procedurally barred due to the fact that I was "represented" by the Tulsa County Public Defender's Office both at trial and on direct appeal.

Ground 11:      It was fundamental error for Judge Gillert to adjudicate Appellant's application without holding an evidentiary hearing.

Ground 12:      Motion for judgment, and amended motion for judgment.

Ground 13:      My appellant [sic] counsel fail [sic] to argue in Petitioner's "initial" appeal that the State fail [sic] to show that Petitioner signed a written search waiver on June 9, 2005, and that the initial entry into Petitioner's apartment was unauthorized.  Moreover, it was a search conducted without a search warrant or a search waiver.

Ground 14:      My appellant [sic] counsel failed to argue that the prosecutor's closing argument was improper unsupported by the record, misled jury, were prominent and well-developed.

Ground 15:      My appellant [sic] counsel failed to argue that the trial court committed reversible error by using "hearsay" evidence of government witness's to make "inadmissible" evidence admissible and "refusing" to give Oklahoma Uniform Jury Instruction 9-42A.

Ground 16:      My appellant [sic] counsel failed to fully and "adequately" address the state violation of Petitioner's Fifth Amendment right under the United States Constitution.

Ground 17:      The accumulation of error in this case deprived Appellant of due process of law, necessitating reversal of his conviction or modification of his sentence pursuant to the Fourteenth Amendment to the United States Constitution.

Id.  In response, Respondent asserts that Petitioner's claims are moot, not cognizable in this habeas proceeding, or do not justify habeas relief under 28 U.S.C. § 2254(d).  See Dkt. # 5.

*ANALYSIS*

**A.     Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c).   See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes, see Dkt. # 5 at ¶ 4, and the Court agrees that Petitioner fairly presented the substance of his claims to the OCCA in his direct appeals and his post-conviction appeal.  Therefore, the Court finds that consideration of the claims raised in the petition is not precluded by the exhaustion requirement of 28 U.S.C. § 2254(b).

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000).

**B.     Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).   Further, the

"determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated grounds 1-7 and 17 on direct appeal from Petitioner's first trial.  See Ball, 173 P.3d 81.  The OCCA also adjudicated grounds 8 and 9 on direct appeal from Petitioner's resentencing trial.  See Dkt. # 5-7.  In addition, the OCCA adjudicated grounds 10-16 on post-conviction appeal.  See Dkt. # 5-9.  Therefore, the § 2254(d) standard applies to this Court's analysis of Petitioner's grounds for relief.

### 1.      Improper admission of testimony by medical experts (ground 1)

As his first ground of error, Petitioner claims that the trial court committed reversible error when it allowed the medical experts to testify that K.T.'s death was not an accident.  See Dkt. # 1 at 3.  On direct appeal, the OCCA stated that Petitioner's primary complaint was that the trial court "admitted the opinion of both physicians that the fatal injuries were purposely inflicted by pouring scalding water on [K.T.], rather than the accidental spill injury described by Appellant in his 911 call and subsequent statement."  See Ball, 173 P.3d at 86.  Citing state law, the OCCA noted "[t]hat a proper expert opinion supplies a strong inference of guilt or innocence is no bar to its admissibility," id. at 87 (citation omitted), and found that,

> The expert testimony properly rebutted Appellant's claimed defense by tending to show that [K.T.]'s injuries were not inflicted in the manner described by Appellant. The jury was properly instructed about expert testimony and its duty to weigh all testimony in reaching its own conclusions.  OUJI-CR(2d) 9-42.  The jury must decide which inferences are properly drawn from the testimony under the Court's instructions and the arguments of counsel.  Admission of expert opinion testimony that [K.T.]'s injuries were not accidental was not an abuse of discretion.

Id. at 88.

13

"[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quotations and citations omitted).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68.  State court evidentiary rulings, such as those alleged by Petitioner, do not warrant habeas relief unless the ruling rendered the "trial so fundamentally unfair as to constitute a denial of federal constitutional rights." Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir. 1998); Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990) (due process claim related to admission of evidence at state trial will not support habeas relief "absent fundamental unfairness so as to constitute a denial of due process of law").

Petitioner has made no effort to show that the testimony of the experts, Dr. Distefano and Robert Block, M.D., rendered his trial fundamentally unfair.  Petitioner's defense at the trial was that K.T.'s injuries resulted from an accident.  See, e.g., Dkt. # 7-6, Tr. Vol. III at 609.  Dr. Distefano, the medical examiner who performed the autopsy on K.T., described his educational and professional background, see Dkt. # 7-8, Partial Tr. at 75-79, described the condition of K.T.'s body and the extent of the thermal injuries he sustained, id. at 83-84, 104, and offered his opinion that K.T. did not die as the result of an accident, id. at 123, 127-28.  Dr. Block, the Chief Child Abuse Examiner for the State of Oklahoma, id. at 170, testified that he had reviewed photographs taken at K.T.'s autopsy and agreed with Dr. Distefano's opinion that K.T.'s injuries and death did not result from a spill or from having a pot of water knocked off the stove onto him, id. at 176, 185.  Thus, the expert medical witnesses provided both crucial testimony concerning the injuries sustained by K.T. and their expert opinions concerning the consistency between this evidence and Petitioner's claim, as made to EMSA and fire personnel at the scene, that K.T.'s injuries were the result of an accident.

Petitioner's trial was not rendered fundamentally unfair by the admission of this evidence. The

OCCA's decision with regard to this claim was not contrary to, or an unreasonable application of,

clearly-established federal law as determined by the Supreme Court.

### 2.    Refusal to give requested jury instructions (grounds 2 and 3)

As his second ground of error, Petitioner claims that the trial court erred when it refused to

give an instruction, as requested by defense counsel, on the defense of excusable homicide. See Dkt.

# 1 at 4. In ground three, Petitioner argues that the trial court erred in refusing Petitioner's request

for an instruction on the lesser included offense of Second Degree Manslaughter. Id. at 5.  On direct

appeal, the OCCA found that the trial judge's refusal to issue the requested instructions was an

abuse of discretion.  See Ball, 173 P.3d at 89, 91.  However, the OCCA determined that, under the

facts of this case, relief was not warranted as a result of the instructional error.  Specifically, the

OCCA found that:

> Reversal of a criminal judgment for misdirection of the jury is condemned
> by statute unless the error "has probably resulted in a miscarriage of justice, or
> constitutes a substantial violation of a constitutional or statutory right." 20 O.S.2001,
> § 3001.1.  The conclusion that the District Court erred in denying certain jury
> instructions according to the legal standards prescribed in our cases is one thing;
> whether that error has "probably resulted" in a miscarriage of justice or a substantial
> violation of rights is another.
>   Appellant's statements, standing alone and unweighed, raised legal defenses
> for which he requested proper instructions.  The District Court should have granted
> those requests.  However, our analysis of the errors on appeal permits a broader
> perspective about their likely impact on the outcome at trial.  Consideration of these
> instructional errors in light of all the trial evidence and other instructions is
> appropriate. Phillips v. State, 1999 OK CR 38, ¶¶ 68-69, 989 P.2d 1017, 1036-1037.
>   Appellant's claims of accident form a fleeting, contradictory, and improbable
> fraction of the trial evidence.  The remaining evidence – including the unchallenged
> consensus of eminent physicians about the purposeful nature of the scalding, and
> other evidence showing that the water was poured in a bedroom rather than spilled
> on the kitchen floor – proves Appellant's guilt beyond a reasonable doubt.  No flight

of imagination is required to believe the jury was entirely unmoved by Appellant's claims of accident.

The jury instructions properly stated the presumption of innocence and the prosecution's burden to prove the elements of both charged offenses beyond a reasonable doubt. Both offenses required findings that Appellant's actions were willful (defined as a "willingness to commit the act or omission") or malicious (defined as wishing "to vex, annoy, or injure another person"). OUJI-CR(2d) 4-37, 4-40D, 4-65A. These instructions cast upon the prosecution the burden to prove a state of awareness and intent antithetical to a finding of accident or negligence, and in effect required the jury to implicitly pass upon Appellant's claims of accident. In light of the evidence as a whole and the remaining instructions, the refused instructions on excusable homicide and second-degree manslaughter would not have changed the outcome. Appellant maliciously scalded a defenseless child and callously secluded him from view of those who might have saved him. Denial of Appellant's requested instructions did not contribute to the verdicts and provides no grounds for reversal. Propositions Two and Three are denied.

Id. at 19-20.

As discussed above, federal habeas relief is not permitted for state law errors. See Rose v. Hodges, 423 U.S. 19, 22 (1975); Patton v. Mullin, 425 F.3d 788, 807 (10th Cir. 2005) (stating that, in general, matters concerning the giving of jury instructions are considered questions of state law and not proper subjects of federal habeas corpus review under 28 U.S.C. § 2254). It is well established that "errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). The burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great

because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" Maes, 46 F.3d at 984 (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

Upon review of the record, the Court finds that Petitioner was not denied a fundamentally fair trial as a result of the trial court's refusal to issue the requested instructions.  As to Petitioner's ground 2 claim, nothing precluded Petitioner from presenting his defense, and the jury was free to find him not guilty of first degree murder based on his defense theory, i.e., that K.T. died as the result of an accident.  It is clear the jury rejected his defense and found the State had proved the elements of first degree murder.  Petitioner is not entitled to habeas corpus relief on ground 2.

As to ground 3, the Court first notes that Petitioner's case is a non-capital case.  Tenth Circuit precedent establishes a rule of "automatic non-reviewability" for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction. Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004); see also Lujan v. Tansy, 2 F.3d 1031, 1036 (10th Cir. 1993) (holding that the failure of a state court to instruct on a lesser included offense in a noncapital case never raises a federal constitutional question).  For that reason alone, habeas corpus relief on Petitioner's challenge to the omission of a lesser included offense jury instruction should be denied. In addition, after reviewing the record, the Court finds that Petitioner has failed to demonstrate that the trial court's refusal to give a jury instruction for a lesser included offense was so fundamentally unfair as to deprive him of a fair trial and due process of law.  Therefore, the OCCA's decision regarding this issue was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1). Habeas relief shall be denied on Petitioner's ground three claim that his constitutional rights were

violated because the trial court refused to give a jury instruction on the lesser included offense of Second Degree Manslaughter.

### 3.    Fourth Amendment violations (ground 4)

As his fourth ground of error, Petitioner claims that the trial court should have suppressed the fruits of the search of Petitioner's apartment because the search violated the Fourth Amendment. See Dkt. # 1. In his habeas petition, Petitioner identifies three (3) sub-issues: (a) the search warrant was a general search warrant prohibited by the Fourth Amendment, (b) the evidence discovered in the closet should have been excluded, and (c) any search waiver purported to have been signed by Petitioner is invalid.[2] Id. at 6. On direct appeal, the OCCA found that "[t]he evidence was properly admitted at trial," and denied relief on Petitioner's Fourth Amendment claims. See Ball, 173 P.3d at 93.

Respondent contends that Petitioner has been provided the opportunity to fully and fairly litigate these Fourth Amendment issues, thus precluding habeas relief according to Stone v. Powell, 428 U.S. 465 (1976). In Stone, the Supreme Court held that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial. Stone, 428 U.S. at 482. The Tenth Circuit has reiterated that a federal habeas corpus court may not overturn a state criminal conviction because of a violation

---

[2]    The third sub-issue was not presented to the OCCA as a separate claim on direct appeal from Petitioner's first trial. See Dkt. # 5-1. However, the claim was argued by appellate counsel on direct appeal from the resentencing trial, see Dkt. # 5-5 at 7-12, and Petitioner argued on post-conviction appeal that appellate counsel provided ineffective assistance in failing to argue that the State failed to show that Petitioner signed a written search waiver on June 9, 2005, and that the initial entry into his apartment was unauthorized.

of the Fourth Amendment if the petitioner had a full and fair opportunity to litigate the claim. Brown v. Sirmons, 515 F.3d 1072, 1082 (10th Cir. 2008); Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992); Gamble v. Oklahoma, 583 F.2d 1161, 1165 (10th Cir. 1978).

The record confirms Respondent's assertion that the state courts granted Petitioner a full and fair opportunity to litigate all of his Fourth Amendment claims, including his claim challenging the validity of his initial consent to search, both during trial proceedings and on direct appeal. Prior to commencement of trial, Petitioner filed a motion to quash and suppress challenging the validity of the search warrant and requesting suppression of all evidence flowing from the illegal search. See Dkt. # 7-19, O.R. at 57-60. On December 14, 2005, the trial judge conducted a hearing on the motion. See Dkt. # 7-1, Tr. Mot. Hr'g at 16-30. Petitioner was present at the hearing, id. at 2, and heard trial counsel affirmatively state that:

> [A]pparently what happened is that the police officers, when they went to this scene, they obtained a search waiver from Mr. Ball allowing them to search the apartment, and then on a later date they decided that they needed to go back in and so they went to a magistrate and obtained a search warrant.

Id. at 18. Defense counsel stated twice that the defense was not attacking the consensual search. Id. at 18, 24. Although the State was later unable to produce the signed waiver, Petitioner made no effort at the December 14, 2005, hearing to correct his attorney's statements. After hearing the parties' arguments, the trial judge overruled Petitioner's motion to quash and suppress. Id. at 30.

On February 14, 2006, the first day of trial, defense counsel renewed the motion to quash and suppress and alerted the trial court to the fact that the written consent to search form, purportedly signed by Petitioner, could not be found. See Dkt. # 7-4, Tr. Vol. I at 68. Therefore, defense counsel argued that the initial entry into the apartment was unauthorized and that evidence recovered

19

during the subsequent search following issuance of a search warrant should be suppressed.  Id. at 68-69.  In response, the State confirmed that the signed consent to search was, in fact, missing, but that Officer Cozad was prepared to testify that he did get consent to search from Petitioner.  Id. at 69-70.  In addition, the State argued that probable cause existed for the issuance of the search warrant, and urged the court to rule that the search warrant affidavit was sufficient, with or without Petitioner's initial consent to enter into the apartment.  Id. at 72.  The trial judge overruled the renewed motion to quash and suppress.  Id. at 75.

Petitioner also raised Fourth Amendment claims related to the search warrant and the seized evidence on direct appeal, see Dkt. # 5-1, where, as discussed above, the OCCA rejected the claims, see Ball, 173 P.3d at 93.  In resolving the Fourth Amendment claims, the OCCA stated that Petitioner did not challenge the consensual search on direct appeal.  See id.

On April 20, 2009, prior to his resentencing trial, Petitioner filed an amended motion to suppress challenging the validity of the search warrant premised on the allegedly false statement that Petitioner had signed a consent to search.  See Dkt. # 7-20, O.R. at 368-70.  The resentencing trial judge's denial of the amended motion to suppress is discussed in Part B(7), below.  In considering Petitioner's challenge to the trial court's denial of his amended motion to suppress on direct appeal from the resentencing, the OCCA declined to "review an issue which was previously decided on an appeal in the same case."  See Dkt. # 5-7 at 2.

Based on that record, the Court finds that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in the state courts.  As a result, this Court is precluded from considering the issues raised in ground 4 of Petitioner's petition for a writ of habeas corpus based on Stone, 428 U.S. at 494.  See also Gamble, 583 F.2d at 1165 (opportunity for full and fair

litigation in state court under Stone v. Powell includes opportunity to raise Fourth Amendment claim, full and fair evidentiary hearing, and recognition and application of correct Fourth Amendment standards).  Petitioner's request for habeas relief on ground 4 shall be denied.

### 4.    Improper evidentiary rulings (ground 5)

As his fifth proposition of error, Petitioner claims that the trial court erred in admitting various items of unfairly prejudicial evidence and testimony.  See Dkt. # 1 at 8.  On direct appeal, Petitioner specifically complained that the trial judge improperly admitted: (1) evidence that Petitioner had engaged in sexual activity several hours after K.T. was injured; (2) evidence of K.T.'s DNA found in blood and fecal matter recovered from the bedroom closet; and (3) testimony by the medical examiner about other injuries to K.T. observed during autopsy.  See Dkt. # 5-1 at 35-41. The OCCA denied relief on this claim, finding as follows:

> Evidence that Appellant engaged in sexual activity with his girlfriend several hours after scalding [K.T.] was relevant to Appellant's state of mind and tended to establish the material elements of both offenses.
>
> Evidence of the presence of [K.T.]'s DNA in blood, skin, and fecal matter in and around the small bedroom closet supported the inference that Appellant confined [K.T.] in this closet after scalding him, not only neglecting [K.T.] but also purposely hiding [K.T.]'s condition from others who might have helped him.  This post-injury behavior amounts to an admission by conduct that tends to rebut Appellant's claims of accident by showing consciousness of guilt.
>
> Testimony about other injuries to [K.T.] observed during the autopsy was properly admitted to show the nature of the post-mortem examination.  Despite its potentially broader admissibility under our cases, the District Court confined this particular testimony to a basic description of the other injuries and permitted no elaboration on whether these injuries were caused by child abuse.  The testimony was not used in any manner unfairly prejudicial to the Appellant.  Proposition Six is denied.

See Ball, 173 P.3d at 93-94 (citations omitted).

Again, "federal habeas corpus relief does not lie for errors of state law." McGuire, 502 U.S. at 67; see also Hooks v. Workman, 606 F.3d 715, 748 (10th Cir. 2010). In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." McGuire, 502 U.S. at 67-68. "In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes, 46 F.3d at 987 (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)). "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements," when engaged in such an endeavor a federal court must "tread gingerly" and exercise "considerable self-restraint." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)).

After reviewing the record in this case, the Court finds Petitioner has not made the necessary showing. The record reflects that the trial judge carefully considered defense counsel's objections to the evidence. First, as to the evidence demonstrating Petitioner had engaged in sexual activity several hours after K.T. was injured, the trial judge concurred with the prosecutor's assessment that the evidence, in the form of testimony from Petitioner's girlfriend, went directly to the issue of child neglect, and overruled defense counsel's objection on that basis. See Dkt. # 7-6, Tr. Vol. III at 704. Next, as to the evidence of K.T.'s DNA found in blood and fecal matter recovered from the bedroom closet, the record reflects that defense counsel objected to the evidence based on both the State's alleged failure to establish the chain of custody for K.T.'s blood sample, see Dkt. # 7-8, Partial Tr. at 63, and on the use of the term "matched" to describe the evidence, id. at 68. At the conclusion of testimony by Valerie Fuller, Ph.D., the trial judge overruled defense counsel's objections to the

testimony.  Lastly, as to testimony by the medical examiner about other injuries to K.T. observed

during autopsy, the trial judge determined that, in order to discharge his duty as Medical Examiner,

Dr. Distefano was required to examine the body and make notes of any significance on the chart.

Id. at 90.  As a result, the trial judge allowed Dr. Distefano to describe his observations, including

other injuries found on K.T.'s body.  The evidence complained of was neither irrelevant, as claimed

by Petitioner, nor unduly prejudicial.  In addition, the Court finds that, in light of the substantial

evidence of Petitioner's guilt, the admission of the complained of evidence did not render his trial

fundamentally unfair.  Petitioner's request for habeas corpus relief on ground 5 shall be denied.

**5.      Prosecutorial misconduct (ground 6)**

In ground 6, Petitioner claims that prosecutorial misconduct resulted in an unfair trial.  See

Dkt. # 1 at 9.  On direct appeal Petitioner claimed that during closing argument, the prosecutor

improperly commented on motive since Petitioner claimed K.T.'s death was the result of an

accident, and that the prosecutor improperly shifted the burden onto Petitioner to "explain" the

evidence.  See Dkt. # 5-1 at 43-46. The OCCA denied relief, finding as follows:

> Appellant's first complaint is that the prosecutor told the jury it need not answer the
> question "why" to convict Appellant of first-degree murder.  The comment properly
> emphasized that the state's evidence need not explain Appellant's inexplicable
> actions in committing these crimes.   The prosecutor's arguments offered his
> interpretation of the evidence and how the jury should apply the instructions of the
> court.  Hancock v. State, 2007 OK CR 9, ¶ 101, 155 P.3d 796, 820.  There is no
> reversible error.
>          Appellant next objects to the prosecutor's argument that the large water spot
> found on the floor of the bedroom in Appellant's apartment was "unexplained."
> Appellant takes this as a prohibited comment on his silence in violation of the
> privilege against self-incrimination, see Griffin v. California, 380 U.S. 609, 85 S. Ct.
> 1229, 14 L.Ed.2d 106 (1965); but "[t]his Court has held that when a defendant fails
> to offer any evidence the prosecutor is not prevented from discussing the evidence
> and to state that such evidence is uncontradicted." Brown v. State, 1975 OK CR 243,
> ¶ 12, 544 P.2d 555, 558.  We find this a fair comment on the inferences arising from

the presence of a large wet area on the bedroom floor following a scalding incident, in light of Appellant's claims that it occurred in the kitchen. Any number of sources might have provided an innocent explanation for this evidence, but none did. There is no grossly improper conduct or unfair prejudice. Proposition Eight requires no relief.

See Ball, 173 P.3d at 95.

Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998). In other words, "absent the infringement of a specific constitutional right, prosecutorial misconduct can result in constitutional error if it 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" DeRosa v. Workman, 679 F.3d 1196, 1222 (10th Cir. 2012) (quoting Donnelly, 416 U.S. at 643). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006). To determine whether a trial is rendered fundamentally unfair, the Court examines the entire proceeding, "including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase," as well as "[a]ny cautionary steps - such as instructions to the jury - offered by the court to counteract improper remarks." Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002). "To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the

prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

In addition, while it is, of course, well settled that a prosecutor may not comment on the defendant's exercise of his Fifth Amendment right, Griffin v. California, 380 U.S. 609, 615 (1965), it is equally well settled that a prosecutor "is otherwise free to comment on a defendant's failure to call certain witnesses or present certain testimony." Trice v. Ward, 196 F.3d 1151, 1167 (10th Cir. 1999). The dispositive legal inquiry is "whether the language used [by the prosecutor] was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent." Battenfield v. Gibson, 236 F.3d 1215, 1225 (10th Cir. 2001) (alteration in original) (internal quotation marks omitted).

In this case, the Court agrees with the OCCA that the prosecutor's comment that the jury need not be concerned about an explanation for Petitioner's actions did not warrant relief. That comment, when viewed in the context of the entire trial, did not result in a fundamentally unfair trial. Furthermore, relief is not warranted for the prosecutor's comment concerning the "unexplained" water spot found in Petitioner's bedroom. The OCCA concluded that the prosecutor's comment was properly directed at Petitioner's failure to present evidence rather than improperly directed at Petitioner's exercise of his Fifth Amendment right. To grant habeas relief, the Court must conclude that the OCCA's ruling "was not merely wrong but unreasonable." See Dockins, 374 F.3d at 940. The Court cannot draw that conclusion in this case. Here, the prosecutor's remarks did not actually refer to Petitioner's decision not to take the stand, and simply referenced the absence of evidence explaining the large water spot in the bedroom. Petitioner has failed to demonstrate that the OCCA's conclusions were contrary to, or an unreasonable application of, federal law as determined

by the Supreme Court.  Habeas corpus relief on Petitioner's claims of prosecutorial misconduct shall

be denied.

### 6.   Ineffective assistance of trial counsel (ground 7)

In ground 7, Petitioner claims he received ineffective assistance of trial counsel.  See Dkt.

# 1 at 10.  On direct appeal, Petitioner alleged that trial counsel provided ineffective assistance in

failing to object to (1) law enforcement's entry into his apartment after the time for the execution

of the search warrant had expired, and (2) testimony regarding his sexual activity on the grounds that

the information had been obtained from his suppressed statement taken during his interrogation.  See

Dkt. # 5-1 at 47-49.  The OCCA cited Strickland v. Washington, 466 U.S. 668 (1984), and found

that "[t]he absence of any Strickland prejudice provides a sufficient ground to dispose of the claims

before us."  See Ball, 173 P.3d at 96.  The OCCA explained its ruling as follows:

> Appellant first challenges defense counsel's failure to object to police entry into
> Appellant's apartment on June 20, 2005, several days after the search warrant
> obtained on June 9, 2005, had expired. As a result of this entry, police poured boiling
> water on the floor and made observations about the condition of the kitchen floor.
> The State offered testimony of these observations at trial.  Appellant's argument fails
> because he voluntarily consented to the search of his apartment.  He has not shown
> that a search warrant was required or that he subsequently revoked his consent.
> Counsel's failure to object to admissible evidence is not deficient performance and
> does not result in prejudice. Bland v. State, 2000 OK CR 11, ¶ 118, 4 P.3d 702, 732.
>
> Appellant next alleges ineffective assistance from counsel's failure to raise
> a proper objection to testimony from Appellant's girlfriend, Lakeishia Thomas. Ms.
> Thomas testified, among other things, that she and Appellant slept together at
> Appellant's apartment the evening that [K.T.] was injured.  Appellant woke Ms.
> Thomas before dawn and they had sex, after which she went back to sleep.
> Appellant argues that because police learned of this sexual liaison from Appellant's
> suppressed statement before it was confirmed by Ms. Thomas in a subsequent
> interview, her testimony was tainted and should have been suppressed.
>
> Appellant again shows no prejudice.  We found this testimony relevant as
> tending to show Appellant's neglect of his son's medical needs.   However,
> Appellant's own statements and other evidence established that he injured his son
> around 8 p.m. on the evening of June 8, 2005, and waited until around 4 p.m. the

following day to seek medical help.  Even if the admission of Lakeishia Thomas' testimony about having sex with Appellant was error, when viewed in the context of other evidence contributing to the conviction, it was harmless beyond a reasonable doubt.  Arizona v. Fulminante, 499 U.S. 279 (1991) (admission of involuntary statement may be harmless error).  This sub-proposition and the supplemental materials fail to show by clear and convincing evidence a strong possibility that trial counsel was ineffective. The application to supplement the record and remand for evidentiary hearing in connection with this claim is therefore denied. Rule 3.11(B)(3)(b)(i).  Proposition Nine requires no relief.

Id. (parenthetical omitted) (footnote omitted).

To be entitled to habeas corpus relief on his claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of the claim was an unreasonable application of Strickland. Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable

probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs. This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

Petitioner bears the burden of demonstrating that the OCCA unreasonably applied Strickland. He has failed to satisfy that burden.   In light of the admissible evidence presented at trial, Petitioner cannot demonstrate that the result of his trial would have been different had counsel lodged objections to law enforcement's entry into his apartment after the time for the execution of the search warrant had expired, and to testimony regarding his sexual activity on the grounds that the information had been obtained during his suppressed interrogation.  Petitioner's jury heard the tape recorded 911 call placed by Petitioner.  See Dkt. # 7-6, Tr. Vol. III at 616.  During that call, Petitioner screamed "I spilled water on him yesterday but I didn't want to go to jail." See Dkt. # 8. The jury also heard Captain Hurt, Tulsa Fire Department (TFD), testify that she arrived at Petitioner's apartment about 4:20 p.m. on June 7, 2005, see Dkt. # 7-6, Tr. Vol. III at 627, and that Petitioner told her K.T. had been injured the night before in an accident, that he did not know what to do, and was afraid he would get in trouble, id. at 634.  Similarly, Curtis Ozment, Assistant Fire Marshal, TFD, testified that Petitioner said he had accidentally knocked a pot of boiling water off on K.T. while in the kitchen the day before, and that he had used cool water and alcohol to treat

28

K.T.'s injuries. Id. at 647. Michael Kisler, the paramedic who treated K.T. at the apartment and transported him to the hospital testified that Petitioner told him his child had been burned and he had dunked his child in cold water just before calling 911, that K.T. then started vomiting and became unresponsive. Id. at 679. Petitioner also told Kisler that K.T. had had no medical treatment for the burns. Id. at 680. The State also presented physical evidence, including dried skin, blood, and fecal matter found in a small closet. Id. at 789-95. DNA analysis demonstrated that DNA contained in the blood and fecal matter found in the closet matched K.T.'s DNA. See Dkt. # 7-8, Partial Tr. at 68, 69. Lastly, both Dr. Distefano and Dr. Block testified that the pattern of burns found on K.T.'s body were not consistent with an accident. Id. at 123, 128, 175-76, 185.

In his first claim of ineffective assistance of counsel, Petitioner complains that defense counsel failed to object to evidence that police officers entered Petitioner's apartment, on June 20, 2005, after the search warrant had expired, to test the effects of pouring hot water on the kitchen's linoleum floor. Even if defense counsel had objected and successfully argued for suppression of that evidence, Petitioner cannot show, in light of the evidence discussed above, that the result of his trial would have been different. Similarly, as to Petitioner's second claim of ineffective assistance of trial counsel, even if defense counsel performed deficiently in failing to object to Thomas's testimony, Petitioner cannot show that the result of his trial would have been different had Thomas's testimony regarding having sex with Petitioner only hours after K.T. suffered his injuries been suppressed. Petitioner has failed to satisfy the prejudice prong of Strickland.

Petitioner has not demonstrated that the OCCA's resolution of his claim of ineffective assistance of trial counsel was an unreasonable application of Strickland. 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on ground 7.

### 7.    Refusal to consider motion to suppress at resentencing trial (ground 8)

In ground 8, Petitioner claims that the district court erred in refusing to consider his amended motion to suppress at his resentencing trial.  See Dkt. # 1 at 11.  In his amended motion to suppress, Petitioner denied ever having signed a written consent to search his apartment and that, as a result, the affidavit in support of the search warrant was premised on the false statement that Petitioner had signed a written consent.  See Dkt. # 7-20, O.R. at 368-70.  Petitioner proceeded to argue that the search warrant was illegal and he sought suppression of evidence recovered from his apartment at his resentencing trial.  Id.  The trial judge ruled that the issues raised in the amended motion to suppress were not properly before him at the resentencing trial.  See Dkt. # 7-18, Tr. Resentencing at 2.  On direct appeal from the resentencing, the OCCA found that the trial judge had "correctly determined that the case had been remanded for the purpose of resentencing only and did not consider [the amended] motion."  See Dkt. # 5-7 at 2.  The OCCA further stated that "[p]ursuant to the 'law of the case' doctrine, we will not review an issue which was previously decided on an appeal in the same case."  Id.  On post-conviction appeal, Petitioner argued that appellate counsel provided ineffective assistance in failing to challenge the validity of the search warrant, on the ground that it was premised on a false statement, on direct appeal.  That claim is discussed in Part B(10)(a), below.

Upon review of the record, the Court finds that the legality of the search warrant was not properly before the district court on remand for resentencing.  The OCCA remanded for resentencing after finding that "the jury's unanswered request for information about the length of time served on sentences and the meaning of life imprisonment creates grave doubt that the lack of an 85% instruction prejudicially impacted the sentencing deliberations. . . .  We therefore vacate the

sentences and remand this case for re-sentencing." See Ball, 173 P.3d at 95.  In order to comply

with the OCCA's remand order, the state district court was not required to reassess the admissibility

of evidence presented at trial.  Significantly, Petitioner has failed to identify any Supreme Court

precedent, and this Court finds none, that clearly establish his right to have a motion to suppress

considered on remand for resentencing.  Petitioner is not entitled to habeas corpus relief on ground

8.

### 8.      Sufficiency of the evidence supporting Child Neglect (grounds 9 and 12)

In grounds 9 and 12, Petitioner challenges the sufficiency of the evidence supporting his

conviction of Child Neglect.  See Dkt. # 1 at 13, 16; Dkt. # 5-8 at 31-33.  Petitioner claims that had

he not been improperly charged with Child Neglect, much of the prejudicial evidence against him,

such as the evidence recovered from the closet, would have been inadmissible.  Petitioner presented

his ground 9 claim to the OCCA as part of his direct appeal from his resentencing trial.  The OCCA

refused to consider the claim, finding that "[t]his issue goes directly to Ball's conviction for child

neglect, and not to any sentencing issue, and we will not consider it.  In this appeal we will review

any claims of error which may have occurred during Ball's resentencing trial."  See Dkt. # 5-7 at

2-3.  Petitioner raised his ground 12 claim as part of his post-conviction petition in error. See Dkt.

# 5-8 at 31-33.

Significantly, in his post-conviction application, Petitioner argued that appellate counsel

provided ineffective assistance when he failed to challenge an erroneous jury instruction, as to Count

2, Child Neglect, on direct appeal.  In resolving Petitioner's post-conviction application, the state

district court found the claim challenging the jury instruction on Child Neglect to be meritorious

and, as a result, set aside the Child Neglect conviction  and dismissed the charge.  See Dkt. # 5-12

at 13-14, 22.  In response to the petition, Respondent argues that Petitioner's claims challenging the validity of his Child Neglect conviction have been rendered moot and should be denied on that basis. See Dkt. # 5 at 55-57.

The Court agrees that any claim challenging the validity of the Child Neglect conviction has been rendered moot by the state district court's ruling setting aside that conviction.  "A habeas corpus petition is moot when it no longer presents a case or controversy under Article III, § 2, of the Constitution." Aragon v. Shanks, 144 F.3d 690, 691 (10th Cir. 1998) (citing Spencer v. Kemna, 523 U.S. 1, 7 (1998)).  "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990).  The parties must continue to have a "personal stake in the outcome" of the lawsuit.  Id. at 478 (quoting Los Angeles v. Lyons, 461 U.S. 95, 101 (1983)).  "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Spencer, 523 U.S. at 7 (quoting Lewis, 494 U.S. at 477).  Because Petitioner's Child Neglect conviction has been set aside and the charge dismissed, his habeas petition does not present a case or controversy as to that conviction.

To the extent Petitioner claims that evidence admitted in support the Child Neglect conviction resulted in prejudice as to the First Degree Murder conviction, the Court finds the claim lacks merit and Petitioner is not entitled to habeas corpus relief.  Petitioner specifically complains of evidence collected from the closet in his bedroom.  That evidence demonstrated that K.T. had been confined in the closet after he was injured and was admissible to show Petitioner's state of mind, intent, consciousness of guilt, and to rebut his claim of accident. Thus, the evidence was

properly admitted as it was more probative than prejudicial and supported the elements of First Degree Murder.

To the extent Petitioner argues that his First Degree Murder conviction should be set aside because his Child Neglect conviction has been set aside, the Court finds Petitioner's claim lacks merit.  Petitioner may be under the mistaken belief that he was charged with First Degree Felony Murder with Child Neglect serving as the underlying felony.  Petitioner may also believe he was charged with First Degree Child Abuse Murder.  Instead, however, he was charged with, and convicted of, Murder in the First Degree.  See Dkt. # 7-19, O.R. at 61.  As noted by the OCCA in resolving this claim on post-conviction appeal, "[e]vidence of Petitioner's abuse of his child was properly and necessarily admitted at trial, and his jury found him guilty of First Degree Murder as a result of that abuse."  See Dkt. # 5-9 at 5.  Petitioner is not entitled to have his First Degree Murder conviction set aside simply because his Child Neglect conviction was set aside.

Petitioner is not entitled to habeas corpus relief on claims asserted in grounds 9 and 12 of the petition.

### 9.      Improper post-conviction rulings (grounds 10, 11)

In grounds 10 and 11, Petitioner complains of post-conviction rulings made by the state courts.  In ground 10, he alleges that the state courts erred in imposing a procedural bar on his claims of ineffective assistance of appellate counsel.  See Dkt. # 1 at 14.  In ground 11, he claims that the state district judge erred in ruling on his application without conducting an evidentiary hearing.  Id. at 15.

As a preliminary matter, the Tenth Circuit Court of Appeals has consistently ruled that challenges to state post-conviction procedures do not rise to the level of federal constitutional claims

cognizable on habeas corpus review.  See Phillips v. Ferguson, 182 F.3d 769, 773-74 (10th Cir. 1999); Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998) (when petitioner asserts no constitutional trial error, but only error in the state post-conviction procedure, no relief can be granted in federal habeas corpus); Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993); Sawyer v. Smith, 497 U.S. 227 (1990).  As a result, to the extent Petitioner challenges post-conviction procedures, his claims raised in grounds 10 and 11 are not cognizable in this federal habeas corpus action.

Furthermore, the state courts did not impose a procedural bar on Petitioner's ineffective assistance of appellate counsel claims as alleged by Petitioner in ground 10.  The state district court considered each claim on the merits and granted relief on the claim based on appellate counsel's failure to challenge the Child Neglect jury instruction, and denied relief on Petitioner's remaining claims.  See Dkt. # 5-12 at 13-19.  Similarly, in affirming the district court's denial of post-conviction relief, the OCCA applied Strickland, 466 U.S. at 687, and found that Petitioner had "not established that issues relating to his trial were not asserted or were inadequately raised by appellate counsel, such that the result of his appeal would have or should have been different."  See Dkt. # 5-9 at 5.  Petitioner's claim that the state courts erred in imposing a procedural bar on his claims of ineffective assistance of appellate counsel lacks a basis in fact.  For that reason, Petitioner is not entitled to habeas corpus relief on ground 10.

Similarly, Petitioner is not entitled to habeas relief on ground 11.  In affirming the district court's post-conviction ruling, the OCCA addressed this claim, citing 22 O.S.2001, § 1083, and Strickland, and stating that "Petitioner has not created a genuine issue of material fact."  See Dkt. # 5-9 at 4.  Whether Petitioner was entitled to an evidentiary hearing in state court is solely a

34

function of Oklahoma law, a decision that this Court will not review in the context of a petition for habeas corpus, which requires Petitioner to establish that he is in custody in violation of federal law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." McGuire, 502 U.S. at 67-68; Romano v. Gibson, 239 F.3d 1156, 1166 (10th Cir. 2001). Petitioner is not entitled to federal habeas relief under 28 U.S.C. § 2254(d)(1) because the OCCA's decision was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court. Significantly, Petitioner has failed to identify any Supreme Court precedent, and this Court finds none, that clearly established his right to an evidentiary hearing or counsel in state post-conviction proceedings.

Petitioner's request for habeas corpus relief on grounds 10 and 11 is denied.

**10.      Ineffective assistance of appellate counsel (grounds 13-16)**

In grounds 13-16, Petitioner claims he was denied the effective assistance of appellate counsel. In affirming the district courts's denial of post-conviction relief, the OCCA applied Strickland, 466 U.S. at 687, and found that Petitioner had "not established that issues relating to his trial were not asserted or were inadequately raised by appellate counsel, such that the result of his appeal would have or should have been different." See Dkt. # 5-9 at 5.

Petitioner is not entitled to habeas relief on these claims unless he demonstrates that the OCCA's adjudication was contrary to, or an unreasonable application of, Strickland. When assessing claims of ineffective assistance of appellate counsel, this Court applies the Strickland two-pronged standard used for general claims of ineffective assistance of trial counsel. See Smith v.

Robbins, 528 U.S. 259, 285 (2000) (citing Strickland, 466 U.S. 668).  When a habeas petitioner

alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct

appeal, the Court first examines the merits of the omitted issue.  Hawkins v. Hannigan, 185 F.3d

1146, 1152 (10th Cir. 1999).  In Cargle v. Mullin, 317 F.3d 1196 (10th Cir. 2003), the Tenth Circuit

directed that:

> If the omitted issue is so plainly meritorious that it would have been unreasonable
> to winnow it out even from an otherwise strong appeal, its omission may directly
> establish deficient performance; if the omitted issue has merit but is not so
> compelling, the case for deficient performance is more complicated, requiring an
> assessment of the issue relative to the rest of the appeal, and deferential consideration
> must be given to any professional judgment involved in its omission; of course, if the
> issue is meritless, its omission will not constitute deficient performance.

Id. at 1202 (citation and footnote omitted); see also Parker v. Champion, 148 F.3d 1219, 1221 (10th

Cir. 1998).

Upon review of the record, the Court finds that the OCCA did not unreasonably apply

Strickland in denying Petitioner's claims of ineffective assistance of appellate counsel.  The Court

shall address each of the claims underlying Petitioner's claim of ineffective assistance of appellate

counsel.

### a.  Initial entry into apartment (ground 13)

In ground 13, Petitioner claims that appellate counsel provided ineffective assistance when

he failed to challenge the legality of Petitioner's purported "search waiver."  See Dkt. # 1 at 18.  On

post-conviction appeal, the OCCA noted that:

> Petitioner called police and emergency personnel pleading with them to come into
> his apartment to try and save his dying son, thus it's hard to understand how he could
> claim the initial entry into his apartment was unauthorized.  The search and seizure
> was raised and adequately addressed in Petitioner's direct appeal.

36

See Dkt. # 5-9 at 4 (citations omitted).

This Court agrees with the OCCA's assessment of the facts underlying this claim.  The content of the 911 call placed by Petitioner, see Dkt. # 8, confirms that Petitioner authorized emergency and law enforcement personnel to enter his apartment to try to save his son's life.  Thus, Petitioner cannot demonstrate that the result of his appeal would have been different had appellate counsel challenged the legality of the initial entry into his apartment.  Petitioner is not entitled to habeas corpus relief on this claim of ineffective assistance of appellate counsel.

### b.  Prosecutorial misconduct (ground 14)

In ground 14, Petitioner argues that appellate counsel provided ineffective assistance when he failed to raise claims of prosecutorial misconduct.  See Dkt. # 1 at 19.  On post-conviction appeal, Petitioner complained of the following comment made by the prosecutor during closing argument:

> Ladies and gentlemen, once again, you look at all of this evidence, the tea pot, the wet spot in the bedroom, the fact that his arms were above his head, and the reasonable inferences that you can make from that, ladies and gentlemen, I would submit to you show that this man used a tea pot in the bedroom to hold his child's hands above his head and in a controlled pour, poured water all over his body.

See Dkt. # 5-8 at 22 (citing Dkt. # 7-7, Tr. Vol. IV at 900-01).  The record reflects that defense counsel's objection to that statement was overruled.  The OCCA rejected this claim, finding that Petitioner "has not established the outcome of his trial or appeal would have or should have been different."  See Dkt. # 5-9 at 4-5.

Petitioner focused his post-conviction argument on the fact that no evidence regarding the use of a tea pot had been presented at trial.  See Dkt. # 5-8 at 22-23.  Thus, Petitioner claimed that the prosecutor misled the jury.  Id. at 23.  However, prior to referencing the tea pot, the prosecutor reviewed for the jury the kitchen equipment seen in the videotape of the apartment prepared by

police officers.  See Dkt. # 7-7, Tr. Vol. IV at 900.  The prosecutor stated that a couple of pots and

pans and a tea pot were on top of the stove.  Id.  "The prosecutor is allowed a reasonable amount of

latitude in drawing inferences from the evidence during closing summations" and such comments

do not make the trial fundamentally unfair.  Duvall v. Reynolds, 139 F.3d 768, 795 (10th Cir. 1998).

Because the prosecutor's statement referencing the tea pot was a reasonable inference based on the

evidence, the statement was not improper.   The Court agrees with the OCCA's finding that

Petitioner has failed to demonstrate that the result of his appeal would have been different had

appellate counsel raised this claim on direct appeal.  Petitioner is not entitled to habeas corpus relief

on this claim of ineffective assistance of appellate counsel.

### c.  Use of hearsay and refusal to issue OUJI-CR(2d) 9-42A (ground 15)

In ground 15, Petitioner complains that appellate counsel provided ineffective assistance

when he failed to challenge the trial court's admission of hearsay evidence and decision not to issue

OUJI-CR(2d) 9-42A.  See Dkt. # 1 at 20.  On post-conviction appeal, Petitioner argued that both Dr.

Distefano and Dr. Block relied on Petitioner's hearsay statements to first responders and on his

involuntary statement to police, which the trial court suppressed, in forming their opinions.  See Dkt.

# 5-8 at 24-26.  For those reasons, Petitioner contended the instruction should have been given and

that appellate counsel performed deficiently in failing to raise the claim.  Id.  On post-conviction

appeal, the OCCA rejected Petitioner's claim of ineffective assistance of appellate counsel, again

finding that Petitioner "has not established the outcome of his trial or appeal would have or should

have been different."  See Dkt. # 5-9 at 4-5.

The record reflects that defense counsel requested that OUJI-CR(2d) 9-42A be issued.  See

Dkt. # 7-7, Tr. Vol. IV at 807.  That instruction "is only needed when testimony concerning the basis

for the opinion of a witness is admitted and the basis of the opinion would not otherwise be admissible, for example, if the opinion is based on hearsay."  <u>See</u> OUJI-CR(2d) 9-42A cmt.  The trial judge declined to issue the instruction, noting that he "made the determination that [the experts] could give opinions based upon information that would have otherwise be[en] admissible.  The statements, spontaneous statements made by the defendant to first responders are specifically admissible and I have made rulings on that."  <u>See</u> Dkt. # 7-7, Tr. Vol. IV at 809.  Contrary to Petitioner's claim, the experts testified outside the presence of the jury that they did not rely on statements made by Petitioner to law enforcement personnel while in custody, found by the trial judge to be inadmissible, in forming their opinions.  <u>See</u> Dkt. # 7-8, Partial Tr. at 93-98, 149-162. Nothing suggests that their opinions, as expressed to the jury, were based on any part of Petitioner's suppressed statement made after he was taken into custody.  The Court agrees with the OCCA's finding that Petitioner has failed to demonstrate that the result of his appeal would have been different had appellate counsel raised this claim on direct appeal.  Petitioner is not entitled to habeas corpus relief on this claim of ineffective assistance of appellate counsel.

### d.  Fifth Amendment violation (ground 16)

As his sixteenth ground of error, Petitioner claims that appellate counsel failed "to fully and adequately address" the violation of his rights under the Fifth Amendment.  <u>See</u> Dkt. # 1 at 21-23. On post-conviction appeal, Petitioner claimed that Dr. Distefano improperly relied on Petitioner's inadmissible statements made while in custody and that his cross-examination of Dr. Distefano concerning other injuries observed on K.T.'s body was improperly limited.  The OCCA rejected post-conviction relief on this claim based on Petitioner's failure to satisfy the prejudice prong of <u>Strickland</u>.  <u>See</u> Dkt. # 5-9 at 4-5.

As discussed above, Petitioner has not demonstrated that Dr. Distefano relied on Petitioner's inadmissible statement in formulating his opinions. In addition, the record reflects that defense counsel made a record concerning "the impediment that has been placed before the defense with regards to cross-examining Dr. Distefano concerning the multiple additional injuries that he was allowed to testify concerning and going to some detail that were observed on [K.T.]'s body." See Dkt. # 7-8, Partial Tr. at 131-33. The trial judge noted that he "didn't hear by suggestion or otherwise, either by questioning or from the witness, that these -- I'm going to call them 'other injuries' were inflicted by the defendant or even there by his knowledge." Id. at 132-33. The trial judge further advised defense counsel that he "could ask for a limiting instruction at this time and I would consider granting it." Id. at 135. Based on review of the record, the Court agrees with the OCCA's finding that Petitioner has failed to demonstrate that the result of his appeal would have been different had appellate counsel raised this claim on direct appeal. Petitioner is not entitled to habeas corpus relief on this claim of ineffective assistance of appellate counsel.

In summary, Petitioner has not demonstrated that the result of his appeal would have been different had appellate counsel raised the omitted claims. Therefore, appellate counsel did not provide ineffective assistance as to those claims. Strickland, 466 U.S. at 687. Petitioner has failed to demonstrate that the OCCA's adjudication of his claims of ineffective assistance of appellate counsel was an unreasonable application of Strickland. Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d).

**11.     Cumulative error (ground 17)**

In ground 17, Petitioner alleges that the accumulation of errors in this case deprived him of due process of law, necessitating reversal of his conviction or modification of his sentence. See Dkt.

# 1 at 23.  On direct appeal, the OCCA remanded "for resentencing to remedy the District Court's refusal of an instruction on the 85% Rule" and found that "no other relief is required" on Petitioner's claim of cumulative error.  See Ball, 173 P.3d at 97.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted).  The Tenth Circuit Court of Appeals has repeatedly held that cumulative error analysis is applicable only where there are two or more actual errors.  Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003).  Cumulative impact of non-errors is not part of the analysis.  Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing Rivera, 900 F.2d at 1471).  "In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." Matthews v. Workman, 577 F.3d 1175, 1195 n.10 (10th Cir. 2009) (internal quotation omitted).  "[T]he task 'merely' consists of 'aggregat[ing] all the errors that have been found to be harmless' and 'analyz[ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" Grant v. Trammell, 727 F.3d 1006, 1025 (10th Cir. 2013) (quoting Rivera, 900 F.2d at 1470).  "Only if the errors 'so fatally infected the trial that they violated the trial's fundamental fairness' is reversal appropriate." Id. (quoting Matthews, 577 F.3d at 1195 n.10).  "[A]ll a defendant needs to show is a strong

likelihood that the several errors in his case, when considered additively, prejudiced him." Id. at 1026.

In this case, the Court determined above that any instructional error by the trial court, as argued in grounds 2 and 3, did not render Petitioner's trial fundamentally unfair.  No other errors were found.  Petitioner has not shown "a strong likelihood that the several errors in his case, when considered additively, prejudiced him." Grant, 727 F.3d at 1026; see also Matthews, 577 F.3d at 1195 n.10.  For that reason, Petitioner is not entitled to habeas corpus relief on ground 17.

**C.  Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue.  Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA is debatable among jurists of reason.  See Dockins, 374 F.3d at 938.  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

***CONCLUSION***

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.    The Clerk of Court shall note on the record the substitution of Robert Patton, Director, as party respondent in this case.

2.    The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

3.    A separate judgment in favor of Respondent shall be entered in this matter.

4.    A certificate of appealability is **denied**.

**DATED** this 31st day of March, 2014.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT